IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| JAMES R. FRY, | * | Chapter 7 |
|     Debtor | * | |
| | * | Case No.: 1-04-bk-06267MDF |
| CHARLES A. BIERBACH, | * | |
| Chapter 7 Trustee, | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | Adv. No. 1-05-ap-00058 |
| | * | |
| CONNIE WAGNER, | * | |
|     Defendant | * | |

## OPINION

### Procedural History

In the instant adversary case, the chapter 7 trustee ("Trustee") seeks an order pursuant to 11 U.S.C. § 547(b)(4)(B) granting the bankruptcy estate of James R. Fry ("Debtor") judgment in the amount of $10,380.00 against Connie Wagner ("Wagner"), Debtor's fiancée. During the twelve months preceding the filing of the petition, Debtor made payments to M&T Bank ("M&T") totaling $10,380.00 on a loan secured by real property owned by Wagner. Section 547(b)(4)(B) allows the Trustee to recover, subject to certain conditions, payments made to or for the benefit of "insiders" of a debtor within one year of the filing of the petition. Wagner filed a timely answer to the Trustee's complaint, and the parties subsequently filed cross motions for summary judgment. Thereafter, the parties agreed that the matter could be submitted for decision on the pleadings and briefs. The matter is ready for decision.[1]

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(J). This Opinion contains the findings of fact and conclusions of law required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

1

## Factual Findings

On March 19, 1997, Wagner granted and conveyed to M&T a mortgage (the "Mortgage") on her residence at 2454 Smoketown Road, Chambersburg, Pennsylvania. The Mortgage secured a Promissory Note (the "Note") executed on even date by Debtor in exchange for a loan from M&T in the amount of $69,060.00. Debtor represented to M&T that he intended to use the proceeds of the loan for business purposes, but neither Debtor's specific purposes for the proceeds, nor their actual use is described in the record.[2] Wagner permitted Debtor to use her home for security without requiring Debtor to give Wagner recourse against him if he defaulted on the Note, and M&T foreclosed on the property. Debtor filed the instant bankruptcy petition on October 18, 2004. In the year prior to the filing Debtor made regular monthly payments to M&T on the Note totaling $10,380.00. The payments were made by direct withdrawal from Debtor's business account.

According Wagner's affidavit, at the time the Mortgage was executed she was not engaged to Debtor or residing with him. At some point thereafter not disclosed in the record, Debtor and Wagner began living together and became engaged. Wagner's affidavit also states that "[a]t no time [has she] ever held any interest of any kind in the business conducted by [Debtor] or any of his financial affairs (sic). [She has] never given him any counsel regarding his

---

[2] In his statement of financial affairs, Debtor lists two businesses that were in existence in March, 1997 – Century Custom ("Century"), a "handyman/small construction" business, and Graveyard Enterprises ("Graveyard"), an operator of "haunted houses." In the schedule of current income filed with his petition in October 2004, Debtor listed his occupation as "superintendent" at T.B. Woods, Inc. He showed no current income from either Century or Graveyard. However, his Statement of Financial Affairs indicated that he had income of $7,494.00 from Century in 2003 and $5,888.00 in 2002. He showed no income from Graveyard between 2002 and 2004, inclusive.

2

business or financial affairs." According to an affidavit filed by Debtor, "[a]t no time did Connie Wagner ever participate in [Debtor's] business or financial affairs. . . ." However, on Debtor's Statement of Financial Affairs, he indicated that Wagner and he were 50% shareholders in a partnership involving a "haunted house."[3] Wagner has not filed a claim against Debtor's estate, nor is she listed in the schedules as a creditor.

## Discussion

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The standards by which a court decides a summary judgment motion are not altered when the parties file cross motions. *Southeastern Pa. Transit Auth. v. Pennsylvania Pub. Util. Comm'n*, 826 F.Supp. 1506, 1512 (E.D.Pa.1993). The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. *Id.* at 324. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When deciding a motion for summary judgment, a

---

[3] The schedules do not make clear whether this partnership was the same business entity as Graveyard Enterprises.

court must draw all reasonable inferences in the light most favorable to the non-movant. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992). Further, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. *Id.*

      a.     *Preferential transfers under 11 U.S.C. § 547(b)*

The Trustee alleges as a matter of law that Section 547(b)(4)(B) authorizes him to recover from Wagner payments Debtor made to M&T during the one-year preference period applicable to insiders. As explained by the United States Supreme Court in *Union Bank v. Wolas*, 502 U.S. 151, 112 S. Ct. 527 (1991),

> the purpose of the preference section is two-fold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter 'the race of diligence' of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section – that of equality of distribution."

*Id.* at 161, 112 S.Ct. at 533 (citations omitted).

Section 547(b) authorizes trustees to avoid preferential transfers of a debtor's interest in property "if five conditions are satisfied and unless one of seven exceptions defined in subsection (c) is applicable." *Id.* at 154, 112 S. Ct. at 529. Under § 547(b) a trustee may avoid transfers of property made:

4

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made–
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if –
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by . . . this title.

11 U.S.C. § 547(b). A trustee bears the burden of proof as to all five elements of § 547(b).

The Trustee's complaint alleges that the monthly mortgage payments made by Debtor to M&T constitute a preference to Wagner because she is an "insider" and that Debtor's payments reduced M&T's potential claim against her real estate if Debtor failed to make payments on the loan.[4] For a transfer to be considered preferential, the Trustee must first prove that the property was transferred to or for the benefit of a creditor. It is undisputed that Debtor made loan payments to M&T, a creditor. The issue before the Court is whether Wagner is a creditor who was benefitted by the payments. A "creditor" is defined, in relevant part, as "[an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10). The Bankruptcy Code defines a claim as "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent,

---

[4]The Trustee does not address the five elements of § 547(b) in either his complaint or his brief. However, Wagner concedes that the transfer was made while Debtor was insolvent (element 3). She also, apparently, does not dispute that the payment was made on account of an antecedent debt owed by Debtor before the transfer was made (element 2). Wagner does dispute that she received more than she would have had the transfer not been made (element 5). Resolution of this issue is unnecessary because I have determined that she is not a creditor and would not have been entitled to receive a distribution from Debtor's estate.

5

matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. 101(5)(A). Whether a party holds a right that can be considered a claim is a question of state law. *Hostmann v. First Interstate Bank of Oregon, N.A. (In re ITI Xonix Technologies, Inc.),* 156 B.R. 821 (Bankr. D. Or. 1993). Debtor's affidavit, submitted by Wagner in support of her assertion that the mortgage payments were not voidable preferences, states that Debtor obtained the loan from Chambersburg Trust Company, predecessor to M&T. In her affidavit, Wagner states that she voluntarily pledged her home to secure Debtor's loan and, in so doing, made a gift to Debtor. Both Debtor and Wagner stated that Wagner received no consideration for the pledge. Wagner asserts that if the mortgage is considered a gift to Debtor, and she had no right to or expectation of reimbursement if her home were sold to satisfy the loan, then Wagner is not a creditor.

In the absence of proof that Wagner's pledge of security for Debtor's loan was a gift, however, well-settled law provides that a pledgor is a creditor because of his rights of subrogation against the primary obligor. In *Smith v. Tostevin*, 247 F. 102 (2d Cir. 1917), the debtor's wife pledged corporate stock to secure the debtor's loan. A week prior to filing for bankruptcy the debtor paid the bank which then released the stock. Judge Learned Hand analogized the pledge of stock to the relationship of a surety to the principal noting that the payment clearly would have been a preference to a surety because after bankruptcy is filed, the right of subrogation is lost.

> A pledgor will be entitled to exoneration against the principal. . . . If the pledge be sold, he is entitled through subrogation to the status of the principal, and upon insolvency he is certain to suffer a loss, measured by the extent of the insolvency. To the extent of the pledge he is the creditor, as much as though he had already discharged his property and taken an assignment of the claim. A payment to the creditor discharging the pledge is therefore a payment upon a claim upon which the pledgor cannot collect; his loss is equally relieved whether it is made to the pledgee or to him.

*Id.* at 103.

*Tostevin* did not consider whether a party may make a gift of the use of collateral as security and, thus, exclude the transfer from the general rule that a pledgor is regarded as a creditor, whether or not he receive consideration for the transfer of the mortgage. Clearly, the actions of the debtor in *Tostevin*, where he satisfied the obligation immediately prior to bankruptcy in order to protect his wife's asset, belied any subsequent representation that the transfer of the stock was a gift. In the case at bar, however, no attempt was made to satisfy the mortgage prior to the filing of Debtor's petition.

In support of her assertion that the mortgage was a gift, Wagner states that she was advised to obtain an indemnification agreement from Debtor in the event that he defaulted on the loan in the future and her home became subject to foreclosure by M&T. According to her affidavit in support of her summary judgment motion, she "advised both the attorney and the Bank personnel that [she] was voluntarily pledging [her] real estate to collateralize Mr. Fry's loan and [she] had no intention of ever bringing any action against Mr. Fry if he would default." Wagner Affidavit, ¶ 4.

The requirements for a gift are intent, delivery and acceptance. *See Cost v. Caletri*, 483 Pa. 11, 18, n. 10, 394 A.2d 513, 517, n. 10 (1978); *Wagner v. Wagner*, 466 Pa. 532, 353 A.2d 819 (1976); *Brightbill v. Boeshore*, 385 Pa. 69, 122 A.2d 38 (1956). "This is so whether we are concerned with monies, a bank account, a stock certificate, or a horse." *In re Sipe's Estate,* 492 Pa. 125, 422 A.2d 826 (1980). The gift Wagner gave to Debtor was the use of her property as

7

Case 1:05-ap-00058-MDF    Doc 16    Filed 12/08/06    Entered 12/11/06 08:46:58    Desc
Main Document      Page 7 of 12

collateral to secure Debtor's performance under the terms of the loan documents.[5] In his counteraffidavit, the Trustee did not dispute Wagner's averments that she intended the transfer to be a gift or that she waived any claim she might have against Debtor in the event of a default. Therefore, I accept these undisputed facts as true. But the question remains, may Wagner unilaterally renounce her status as a subrogee, thus distinguishing her status from that of the debtor's wife in *Tostevin*?

Several courts have found that parties who have guaranteed a corporate debtor's loans, but who have waived their rights to subrogation, are not creditors for purposes of § 547(b). *See Southmark Corp. v. Southmark Personal Storage, Inc. (In re Southmark Corp)*, 993 F.2d 117 (5th Cir. 1993); *O'Neil v. Orix Credit Alliance, Inc. (In re Northeastern Contracting Co.)*, 187 B.R. 420 (Bankr. D. Conn. 1995); *In re XTI Xonix, supra*; *Hendon v. Associates Commercial Corp. (In re Fastrans, Inc.)*, 142 B.R. 241 (Bankr. E.D. Tenn. 1992). I find the position that a guarantor's waiver of his subrogation claim against the debtor destroys the debtor/creditor relationship to be persuasive, although I am mindful that this approach has been subjected to criticism. *See Russell v. Jones (Pro Page Partners, LLC)*, 292 B.R. 622, 630 (Bankr. E.D. Tenn. 2003) (authorizing waiver of subordination claim elevates form over substance). In this case, however, the Trustee did not assert that Wagner's representations were untrue when made or

---

[5] Pennsylvania historically has considered mortgages as merely security interests that do not pass title. *In re City of Philadelphia, Fortieth Ward*, 360 Pa. 589, 63 A.2d 42, 43 (1949). In 2004, however, the Pennsylvania Supreme Court held that for purposes of the recording acts, a mortgage conveys title to the mortgagee until the obligations under the mortgage are fulfilled. *Pines v. Farrell*, 577 Pa. 564, 574, 848 A.2d 94, 100 (2004). The Supreme Court expressly declined to address whether the title theory would apply in foreclosure or bankruptcy matters. *Id.* at n. 7. The traditional understanding of a mortgage agreement as security more accurately describes the intent of the parties in the within case than does the title theory.

8

were calculated to exclude her from possible preference liability. The Trustee did not dispute that Wagner informed the parties at the time she executed the mortgage in favor of M&T that she was pledging her property and waiving any recourse she might have against Debtor if he defaulted under the terms of the loan. Therefore, I find it is appropriate to grant summary judgment in favor of Wagner because the Trustee failed to meet his burden to establish all five elements of a preferential transfer.[6]

> b. *Ordinary course defense*

Although I have found that the Trustee failed to establish all the elements necessary to find an avoidable preference, even if a preference had been established under § 547(b), recovery is barred by the ordinary course defense under § 547(c)(2). If the elements of a preference are established, the transferee has the burden of proving that the transfer is excepted from avoidance under § 547(c). 11 U.S.C. § 547(g). Debtor and the Trustee agree that the payments to M&T were made in the "ordinary course" of business between Debtor and M&T. The Trustee, however, asserts that as an insider beneficiary of these payments, Wagner is not permitted to claim the preference defense set forth in 11 U.S.C. § 547(c)(2).

---

[6]The Trustee argued that Wagner was an insider. This determination is relevant only for the purpose of determining the appropriate look-back period under § 547(b)(4). The Trustee accurately identified the contradiction between Debtor's affidavit, which stated that Wagner was not involved in his business or financial affairs, and his statement of financial affairs, which listed Wagner as a partner in his "haunted house" business. Wagner also stated in her affidavit that her assets were not comingled with Debtor's, nor had she participated in his business affairs. Had I found that Wagner was a creditor, there would be a genuine issue of material fact as to whether she was an insider for purposes of determining whether transfers could be recovered for the period between 90 days and one year before the petition was filed.

9

In pertinent part Section 547(c)(2) provides that a trustee may not avoid a transfer:

(2) to the extent that such transfer was –
    (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
    (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
    (C) made according to ordinary business terms.

11 U.S.C. § 547(c). Section 547(c)(2) excepts certain transfers from the trustee's avoidance powers under Section 547(b), even when the transfer involves an insider. *Houston Heavy Equipment Co., Inc. v. Gould,* 198 B.R. 693, 696 (S.D. Tex. 1996) ("A trustee may not avoid a transfer in the ordinary course of business of the debtor and the transferee even if insiders are involved.").

Generally the language of subsection 547(c)(2)(b) has been parsed to apply the phrase "ordinary course of *business*" to business debtors and "ordinary financial affairs" to individual debtors not otherwise engaged in business. *See e.g. In re Finn*, 909 F.2d 903 (6th Cir. 1990); *In re Armstrong*, 260 B.R. 454 (2001); *In re Planas*, 1998 WL 34070561 (Bankr. S.D. Fla.); *In re Winn*, 127 B.R. 697 (Bankr. N.D. Fla. 1991). The purpose of the ordinary course defense is:

    to leave undisturbed normal financing relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy.

*In re Richardson*, 94 B.R. 56, 59 (Bankr. E.D. Pa. 1988). More particularly, the *Richardson* court described the purpose of a preference action and the function of the ordinary course defense as follows:

    [T]he purpose of a preference action is to prevent a particular creditor from obtaining more favorable treatment than other creditors, that is, to insure equality of treatment; the purpose of the ordinary course of business and business terms exception is to ensure that normal transactions are not caught in the net of the trustee's avoidance powers. The obvious 'extra-ordinary' transaction is the

> unusual one which results in the transferee obtaining an advantage in distribution over other bankruptcy creditors. It has been left to the courts to develop the test for 'ordinariness' of the transfers under section 547(c)(2).

*Id.* at 59 (citations omitted).

In determining whether a course of business was made in the normal course of an individual debtor's business, a court must consider factors such as:

> the length of time the parties have engaged in the type of dealing at issue, whether the subject transfer was in an amount more than usually paid, whether the payments were tendered in a manner different from previous payments, whether there appears any unusual action by either the debtor or creditor to collect or pay on the debt, and whether the creditor did anything to gain an advantage (such as gain additional security) in light of the debtor's deteriorating financial condition.

*Id.* at 60 (citations omitted); *see also In re Pittsburgh Cut Flower Co.*, 124 B.R. 451, 460-61 (Bankr. W.D. Pa. 1991). As to all elements of the exception, the burden of proof is upon the transferee, and the applicable standard is the preponderance of the evidence standard. *Richardson*, 94 B.R. at 59; *In re Grove Peacock Plaza, Ltd*, 142 B.R. 506, 510 (Bankr. S.D. Fla. 1992); *In re Van Huffel Tube Corp.*, 74 B.R. 579, 588 (Bankr. N.D. Ohio 1987).

In the instant case, Wagner avers that the payments to M&T were made in the ordinary course of Debtor's business and so they are excepted from the Trustee's avoidance powers. In his brief, the Trustee admits that the payments between Debtor and M&T were made in the ordinary course. He argues, however, that the ordinary course defense is not available to Wagner. The Court has found no case that supports the Trustee's position, and his reliance on *In re Marilyn Steinberg Enterprises, Inc. v. Steinberg (In re Marilyn Steinberg Enterprises, Inc.),* 141 B.R. 587 (E.D. Pa. 1992) is misplaced. The Trustee interprets *Marilyn Steinberg Enterprises* as standing for the proposition that if a payment to a third party is made *for the benefit of* an insider (rather than directly to the insider), it is preferential. The Trustee's reading

11

of *Marilyn Steinberg Enterprises* accurately states the elements of a preference, but it misunderstands the court's observations on the availability of the ordinary course defense to an insider. To the contrary, the court states that "there is no statutory basis to deny the defenses of section 547(c) to any defendant in a preference litigation." *Id.* at 597.[7] *Accord Meridith Hoffman Partners v. Clark (In re Meridith Hoffman Partners)* 12 F.3d 1549, 1555 (10th Cir. 1994) ("If a transfer was 'in payment of a debt incurred . . .in the ordinary course of business,' . . . it is not avoidable and cannot be recovered under section 550(a) from anyone, whether [sic] initial transferee or the creditor for whose benefit the transfer was made.")

Therefore, the Trustee has failed to sustain his burden to prove that Wagner received a preferential transfer under § 547(b), and he is not entitled to summary judgment. Wagner, however, has proven that even if the Trustee had established that the payments to M&T constituted a preference to her as an insider, she is entitled to invoke the ordinary course defense, which the Trustee concedes is available to M&T. Wagner's motion for summary judgment is granted. A separate order will be entered.

By the Court,

*Mary D. France*
Bankruptcy Judge

*This document is electronically signed and filed on the same date.*

Date: December 8, 2006

---

[7]In *Marilyn Steinberg Enterprises*, the bankruptcy court followed the *Deprizio* line of cases, which held that preferential transfers made during the extended reach back period could be recovered from either the insider creditor for whose benefit the transfer was made or from the noninsider initial transferee. *See Levit v. Ingersoll Rand Financial Corporation (In re Deprizio)*, 874 F.2d 1186 (7th Cir. 1989). *Deprizio* was overruled by the 1994 amendments to § 550(c), which provide that a trustee may not recover payments made to a noninsider transferee beyond the 90-day preference period.